IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

THE NEW HAMPSHIRE INSURANCE )
CO., )
  )
    Plaintiff, )
  )
  )
vs. ) CASE NO. 3:10-0607
  ) JUDGE SHARP/KNOWLES
  )
  )
BLACKJACK COVE, LLC, )
  )
    Defendant/Counter Plaintiff. )

# ORDER

This matter is before the Court upon Plaintiff's "Motion to Compel [Defendant] to Answer [Plaintiff's] Second Set of Interrogatories and to Respond to [Plaintiff's] Second Request for Production of Documents." Docket No. 54. Defendant has filed a Response in Opposition to the Motion. Docket No. 65. With leave of Court, Defendant has filed a "Supplemental Response" to the Motion. Docket Nos. 93, 94. Also with leave of Court, Plaintiff has filed a Reply to Defendant's Supplemental Response. Docket Nos. 97, 98.

Unfortunately, Plaintiff did not submit a supporting Memorandum of Law, as required by Local Rule 7.01(a). The significance of this fact will be discussed in greater detail below.

In essence, this lawsuit concerns whether Plaintiff has complied with its obligations under an insurance policy it issued to Defendant covering Defendant's Marina on Old Hickory Lake. The Marina suffered significant damage as a result of a storm that occurred on April 2, 2009. Defendant's marine surveyor, Ron Silvera, inspected the marina twice after this storm.

Mr. Silvera was provided a "bid," known as the "Bobby Reed bid," although Defendant prefers to refer to that document as an "estimate of the cost to repair or replace items included within Mr. Silvera's scope of loss report." Docket No. 65, p. 3. Mr. Silvera examined the document, made revisions to it, and determined that it accurately set forth the damage he had identified at the Marina and that it was an "accurate and fair estimate" that was "in keeping with the local market." The amount of the estimate was $2,595,558.

Between May 1, 2009, and July 14, 2009, Plaintiff paid Defendant (and/or its mortgagee) the full amount of the estimate, less a deductible of $25,000. Plaintiff avers that it subsequently learned that the damage to the Marina as a result of the storm was only approximately $500,000. Additionally, Plaintiff learned that the estimate may not have been prepared by Bobby Reed, that Bobby Reed did not intend to do the work discussed in the estimate, and that a company related to Defendant's sole member actually performed the repair work.

Plaintiff thereafter filed this action seeking a declaratory judgment and seeking to recover amounts that it may have erroneously paid to Defendant. Defendant has filed a counterclaim, averring that Plaintiff still owes it money under the terms of the Policy.

It is significant to note that the Policy at issue provides in relevant part:

> We will determine the value of Covered Property in the event of loss or damage at replacement cost (without deduction for depreciation) as of the time of loss or damage.

Docket No. 65, p. 2.

Turning to the instant Motion, Plaintiff served a Second Set of Interrogatories and Requests for Production of Documents to Defendant. Defendant submitted Responses, which Plaintiff believes are "evasive and/or incomplete." In a later filing, Plaintiff states that

2

Defendant has produced photographs that are responsive to the Request Nos. 7 and 8, and that Plaintiff "is no longer seeking an order compelling Blackjack Cove to respond to" those Requests. Docket No. 98, p. 6. Thus, only three Interrogatories are at issue.

The Interrogatories and the Responses thereto are set forth in the instant Motion. For present purposes, it is sufficient to note that each of the Interrogatories asks Defendant to "state with specificity the repairs, replacement, renovation, demolition, reconfiguration, improvements, or other work or construction from April 2, 2009 to February 4, 2011," with respect to a number of docks. Plaintiff argues in relevant part as follows:

> One of the central issues in this lawsuit is what damage was sustained in the storm and what repairs were made as a result of the storm. This Interrogatory [Interrogatory No. 1] asks Blackjack Cove to identify with specificity the repairs, replacement, renovation, demolition, reconfiguration, improvements, or other work or construction from April 2, 2009 to February 4, 2011, with respect to each category of repairs listed in the "Bobby Reed bid." Such information is relevant because it establishes what repairs were made to each structure at the Blackjack Cove facility after the date of storm. New Hampshire contends the docks were put back in the same condition or better than the conditions prior to the storm. The docks, the condition of the docks before and after the storm, and the repairs to the docks *are the subject matter of this litigation*.

Docket No. 54, p. 5-6 (emphasis added).

In answer to the first Interrogatory, Defendant stated in part, "Blackjack Cove objects to this Interrogatory on the grounds that it seeks information *not relevant to the subject matter of the pending action* and not reasonably calculated to lead to the discovery of admissible evidence." Docket No. 54, p. 4. The grounds for Defendant's objection, as set forth in its Interrogatory responses and in its Opposition, are essentially that repair costs are not relevant. Defendant argues that there is no obligation under the policy that it repair or replace the docks or

3

that any construction occur at the Marina. Defendant further argues that it did not have any obligation to spend the money due under the policy for dock repair.

Without prejudging the issues, it appears to the Court that Plaintiff's obligation to pay under the policy is based on the damage and the replacement cost without deduction for depreciation; it is not based upon repairs or how much was spent on repairs.

The key concern of the Court, however, is that the parties are arguing the wrong standard for relevance. As discussed above, Plaintiff and Defendant both speak in terms of the "subject matter" of this action. Fed. R. Civ. P. 26(b)(1), which pertains to the scope of discovery in general, *formerly* provided in relevant part, "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the *subject matter* involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . ." Fed. R. Civ. P. 26(b)(1), 1993 version (emphasis added). Rule 26(b)(1), however, was significantly amended in 2000 to narrow the scope of discovery to matters "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The Advisory Committee notes to the 2000 Amendment to Rule 26(b)(1) state in relevant part:

> The amendment is designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery. The Committee has been informed repeatedly by lawyers that involvement of the court in managing discovery is an important method of controlling problems of inappropriately broad discovery. . . .
>
> The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action. . . .
>
> The rule changes signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the party that they have no entitlement to discovery to develop new claims or defenses that are not already

4

identified in the pleadings.

The parties have addressed the instant issue in terms of the subject matter of the action, not in terms of the claims or defenses of the parties. Had Plaintiff submitted an appropriate Memorandum of Law with the instant Motion it would be clear to the Court which standard the parties were attempting to apply. As it is, the Court can only conclude that they have addressed the wrong standard.

For the foregoing reasons, and for Plaintiff's failure to comply with Local Rule 7.01(a), the instant Motion to Compel (Docket No. 54) is DENIED.

IT IS SO ORDERED.

_____
E. Clifton Knowles
United States Magistrate Judge

5

Case 3:10-cv-00607   Document 125   Filed 01/31/13   Page 5 of 5 PageID #: 3453